ALABAMA & VICKSBURG RAILWAY COMPANY v. JEFFERSON JONES.

1. RAILROADS. *Passengers. Invitation to alight. Moving train.*

The words "this door," used by a flagman of a passenger train to a passenger starting to leave the car after the train had started from a station, do not amount to an invitation to alight from a moving train.

2. SAME. *Contributory negligence.*

A passenger is guilty of contributory negligence if he get off a moving train and hold on to the railing of the platform with his hands until he is jerked down and dragged until he is no longer able to maintain his hold.

FROM the circuit court of Scott county.

HON. JOHN R. ENOCHS, Judge.

Jones, the appellee, was plaintiff, and the railway company, the appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*McWillie & Thompson,* for appellant.

But for certain averments of the declaration going to remove the imputation of contributory negligence arising on other allegations thereof, it would have been demurrable. *Meyer v. King,* 72 Miss., 1.

The plaintiff having failed to offer any evidence in support of the particular allegations relied on to overcome the imputation of contributory negligence arising from his admitted attempt to alight from a moving train at night without knowing whether its rate of speed made the act dangerous or not, the court below erred in refusing the peremptory charge asked by defendant. Moreover, the manner in which the plaintiff descended from the train was marked by contributory negligence, and justified the request for a peremptory charge. All the evi-

dence, including the plaintiff's own testimony, showed that he descended from the moving train with his back to the engine and continued to hold on to the hand rail until he lost his footing.

It was conceded on the trial that the train did stop at Morton, and the question as to that part of the complaint is as to how long it stopped. The plaintiff did not state the time, and his witness Manning said it stopped two minutes, while his witness Moore said a minute and a half, either of which periods, as can be easily tested, afforded ample time for the plaintiff to alight in safety. It is true that the plaintiff's counsel then asked the witnesses to indicate, while he held his watch, when, after a given signal, they should think that the periods mentioned by them, respectively, had elapsed, and that only a quarter of a minute had expired when they responded with the indication. The test lacks probative force, for in the hush that follows a suspension of the trial the witness with the eyes of the whole assembly upon him will always find that less time has elapsed than he supposed. If, however, we give it the utmost effect that could be claimed for it, it can only be treated as an experiment showing that the two witnesses were unable to estimate the passage of time with accuracy, and he who introduced the testimony would have succeeded in breaking it down.

The defendant's conductor said the length of the stop was not less than two minutes; the flagman said three or four minutes; the engineer said it was the usual stop, which was two or three minutes, sometimes five; the telegraph operator, not in the employ of defendant at the time of trial, said the usual stop was one to two minutes, but on the night in question the train stopped four or five; the flagman showed that it stopped long enough for him to get off and go to the baggage car and unload two pieces of baggage and load one, in which statement he was confirmed by the conductor, and the operator whose duty it was to make reports of delay at station says he timed the train

by his watch, and the stop was between four and five minutes. The train manifestly stopped several minutes, and if the plaintiff and his companion were not asleep when it reached Morton, they must have done something to delay them on the train, as appears likely from their getting off from the white people's ·car, where they had no business to alight.

*Green & Green,* for appellee.

The evidence, which the jury found to be true, shows that upon the arrival of the train at Morton plaintiff and his companion at once got up and went to the door, and when they reached it the train was in slow motion, and that the plaintiff's companion, Manning, who was in front, got off safely, but when appellee was about to get off, the train gave a sudden violent lurch and threw him off his feet, and having hold of the banister he was dragged some distance and seriously injured. Plaintiff testifies: "The train was moving; it made a lunge, and before I knew anything I was off. This is all I can tell you."

The evidence showed that the train only made a stop there of about one-quarter of a minute, and there were no proper lights at the station.

The appellant's violation of duty was manifest and manifold—in not stopping a sufficient length of time to allow the passenger to alight, in suddenly starting the train with such a jerk, after such a step, as to throw a passenger off the train, and in failing to have proper lights and a proper place for passengers to alight from the train. The injuries were so many and serious, and having been inspected by the jury, this court cannot say that the verdict is excessive. Hutchinson on Carriers (2d ed.), 612.

The right of appellee to recover in this state is settled by *Railroad* v. *Kendrick,* 40 Miss., 386; *Railroad* v. *Whitfield,* 44 Minn., 482; *Railroad Co.* v. *West,* 66 Miss., 310; *Davis* v. *Railroad,* 69 Miss., 136; *Wooten* v. *Railroad,* 79 Miss., 26.

Cox, J., delivered the opinion of the court.

Jefferson Jones, an aged negro, was a passenger on one of the defendant's passenger trains from Jackson to Morton. Arriving at Morton in the night, he either fell or was jerked down upon the depot platform as he attempted to alight, and thereby sustained certain injuries, for which he brought suit and recovered judgment. In his declaration he alleges that defendant so negligently operated its said train as that it did not stop to permit plantiff and other passengers to get off, or, if it stopped at all, which plaintiff denies, said train was so negligently operated as that a reasonable time was not afforded plaintiff and other passengers thereon to get off before the said train was again negligently set in motion by the defendant; that plaintiff, when he reached the platform of said car, was unable to see and appreciate how fast the train was running, as the said platform was negligently without light, and the darkness of the night, together with the blinding effect of coming out of the lighted car, and the plaintiff's inexperience with moving trains under such circumstances, prevented an appreciation of the danger in getting off the train under the circumstances; that the brakeman or porter, defendant's servant, whose duty it was to give direction to passengers as to getting off and on said train, then and there, with knowledge of the danger to which he was exposing plaintiff, negligently directed and commanded plaintiff to get off of said train while in motion, and relying upon the superior knowledge of the said servant of the risk of such action, and that he would not (being charged with plaintiff's safety) direct plaintiff to get off said train unless it was safe to do so, and in ignorance of the danger attendant thereon, especially for persons, like plaintiff, having no experience in getting off moving trains, plaintiff obeyed said directions and command, and, taking all precautions then known to plaintiff in pursuance of said direction and command, plaintiff attempted to get off of said train while in motion. The declaration further alleges, in substance, that plaintiff,

acting upon the command of defendant's servant in attempting to get off while the train was in motion, caught hold of the hand rail of the steps of said car to get off, and, not being informed by defendant's servant that the effect of so doing would be to drag plaintiff along with said car, was then and there dragged along by said train one hundred feet, the servant of defendant whose negligence had caused plaintiff to attempt to get off standing then and there and seeing plaintiff's danger, and, with the appliances at hand to signal the engineer to stop the train, failed so to do, but allowed the engineer to continue to increase the speed of the train until plaintiff was no longer able to hold on, and was then and there hurled by the rapidly moving train with great violence upon the ground.

This declaration could not possibly have been sustained against a demurrer on the ground of contributory negligence, except for the averment that plaintiff attempted to get off the moving train in obedience to the direction and command of defendant's servant. Upon the trial it was evident that the train came to a full stop, and remained standing for an interval variously estimated by the witnesses at from one to five minutes, though guessed by several witnesses, while the watch was held, at a quarter of a minute. The conductor had time to walk a car length from the ladies' car to the baggage car, and the porter had time to go from the car for negroes to the baggage car, take off two pieces of baggage and put on one, and signal the conductor, "All right," before the train moved. When plaintiff got to the platform of the car, the train was in motion. It was dark. He did not know how fast the train was going, but he knew it was in motion. His companion just ahead of him jumped or stepped off. He went down to the last step with a small grip in his left hand, and, clutching the hand rail with his right, attempted to get off on the depot platform. He either stepped, fell, or was jerked from the step, and was dragged with his back to the engine a short distance by the train, until defendant's porter, seeing he was being

dragged, shouted to him to turn loose, and got hold of him and pulled him out. There is nothing in the evidence to sustain the allegation that a servant of defendant directed and commanded plaintiff to get off the train while in motion. True it is that plaintiff said he was invited off the train by the flagman, but, in response to the question, "What did he say to you?" he responded, "He said, 'This door.'" This clearly was a direction to plaintiff as to which door to leave the car by, and not an invitation to step off the train. The train was moving east. He got off on the south side, and, clinging to the hand rail with his right hand as he stepped or fell, this inevitably jerked him down backward, and caused him to be dragged backward until his grip upon the hand rail was loosed. We see nothing in the facts of this case which tends to acquit plaintiff of negligence in getting off the train at the time, in the manner, and under the circumstances shown, and that such negligence contributed proximately to his injury is certain.

*Reversed and remanded.*